

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00454-CR

———————————————————

TIMOTHY EARL DARROUGH JR., Appellant

V.

THE STATE OF TEXAS

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1825144

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant Timothy Earl Darrough Jr. appeals his convictions for five counts of impeding the normal breathing or circulation of a family member—all with a prior conviction—and one count of assault–family violence with a prior conviction.[1] *See* Tex. Penal Code Ann. § 22.01(b)(2)(A), (b-3). In his sole point, Appellant contends that the trial court abused its discretion when it admitted a Facebook profile with a "semi-nude" photograph of the complainant over his Rule 403 objection. Because the Facebook profile that Appellant created for the complainant was clearly relevant to show why she kept returning to him—he had threatened to post intimate photos or videos of her, a threat that he made into a reality with the Facebook profile—and because the probative value of the complained-of evidence was not substantially outweighed by the danger of unfair prejudice, we affirm.

### II. Background

The complainant and Appellant had a tumultuous four-year on-again–off-again relationship. Shortly after they started dating in 2019, Appellant impregnated the complainant and then forced her to terminate her pregnancy. They broke up at the end of 2020, but she returned to him and "endured a lot because [she] needed to make [terminating her pregnancy] worth something."

---

[1]We use the term "assaultive charges" or "assaultive incidents" when jointly referencing all six counts.

Appellant began to be violent with the complainant in October or November 2022. She ended the relationship in March 2023, but that did not end Appellant's contact with her.

During their dating relationship, they made intimate videos, which Appellant kept in his possession. According to the complainant, Appellant used the videos to coerce her into doing his laundry at her house, having sex with him, and giving him money; he told her that he would delete the videos if she did what he asked. Appellant, however, did not delete the videos from every device on which they were stored. She watched him delete the videos from some devices, and Appellant even gave her his computer so that she could delete them off that device, but then he later sent their intimate videos to her via text.

Appellant leveraged the videos after the March 2023 breakup through the rest of that year, and he repeatedly threatened to post the videos or to send them to the administration of the school where she taught.[2] The complainant explained that the two reasons that she had continued to see Appellant after she had ended their relationship in March 2023 were as follows: (1) the terminated pregnancy had created a tie to him that she wanted to "justify in some way and help him," and (2) he had

_____

[2]The complainant recorded some of her phone calls to Appellant. During the calls, he threatened to embarrass her and ruin her reputation by posting or sending her employer the intimate videos that he had made with her. The recordings were admitted into evidence.

promised to delete the videos if she did what he asked (she described this as the main reason for continuing to see him).

Between April and November 2023, Appellant strangled the complainant five times and assaulted her one time, as set forth in the first six counts of the indictment. The last strangulation occurred on November 25, 2023, after they argued about the videos. She made a police report at the beginning of December 2023.[3]

A jury found Appellant guilty of five counts of impeding the normal breathing or circulation of a family member—all with a prior conviction—and one count of assault–family violence with a prior conviction.[4] The jury assessed punishment on each of the five impeding-breath counts at sixteen years' confinement and at five years' confinement on the single count of assault–family violence. The trial court sentenced Appellant in accordance with the jury's recommendations and ordered the sentences to run concurrently.

## III. Discussion

In his sole point, Appellant argues that the trial court abused its discretion by admitting a Facebook profile with a "semi-nude" photograph of the complainant over

---

[3]During defense counsel's cross-examination of the complainant, he set forth the date of each assaultive charge and then asked whether she had called the police after any of the assaultive incidents.

[4]The jury also found Appellant guilty of Count 8 (two convictions of assault–family violence within twelve months) but not guilty as to Count 7 (a second count of assault–family violence in addition to the one in Count 6). Because the finding of not guilty on Count 7 negated the finding of guilt on Count 8, the trial court set aside the jury's finding on Count 8.

his Rule 403 objection. After applying the balancing factors, as set forth below, we cannot say that the trial court abused its discretion by admitting evidence showing that Appellant had made good on his threat to post intimate photos of the complainant.

### A.      Standard of Review and Applicable Law

This court has previously summarized the standard of review that we apply when evidence is admitted over a Rule 403 objection:

> We review the trial court's admission of evidence over a Rule 403 objection for an abuse of discretion. *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd). If the trial court's evidentiary ruling is correct under any applicable theory of law, then it will not be disturbed. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). In reviewing a trial court's determination of the admissibility of extraneous-offense evidence, we recognize the trial court's superior position to gauge the impact of the evidence and, accordingly, will reverse "rarely and only after a clear abuse of discretion." *Lumsden v. State*, 564 S.W.3d 858, 877 (Tex. App.—Fort Worth 2018, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "A trial court judge is given considerable latitude with regard to evidentiary rulings." *Fowler v. State*, 544 S.W.3d 844, 848 (Tex. Crim. App. 2018).

*Newhouse v. State*, No. 02-23-00265-CR, 2024 WL 3819307, at *3 (Tex. App.—Fort Worth Aug. 15, 2024, pet. ref'd) (mem. op., not designated for publication); *see also Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024).

Rule 403 favors admitting relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial. Tex. R. Evid. 403; *Jabben v. State*, No. 02-23-00210-CR, 2024 WL 3897994, at *18 (Tex. App.—Fort Worth Aug. 22,

2024, pet. ref'd) (mem. op., not designated for publication); *James v. State*, 623 S.W.3d 533, 546 (Tex. App.—Fort Worth 2021, no pet.). Because of this presumption, the party opposing the admission of the evidence has the burden to show that the evidence's probative value is substantially outweighed by one or more of the dangers listed in Rule 403—including unfair prejudice and misleading the jury. *Jabben*, 2024 WL 3897994, at *18; *James*, 623 S.W.3d at 547.

To determine whether evidence is admissible over a Rule 403 objection, the trial court must conduct a balancing test. *Montgomery*, 810 S.W.2d at 389; *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has instructed that when undertaking a Rule 403 analysis, courts must balance (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42.

### B. Testimony Regarding the Objected-to Evidence

During the complainant's testimony, she was asked about a Facebook page that Appellant had created while she was out of state:

Q.   [W]e've talked a lot about the threats that were made to publish intimate material involving the two of you.  What happened in regard to that in July of 2023?

A.   He had made a Facebook account with a picture of me while I was out of town.

Q.   While you were what?

A.   Out of town.

Q.   Where were you?

A.   I was in North Carolina visiting a friend.

Q.   Okay.  And how did you know that he had done this?

A.   Because he had told me.

Q.   How did he tell you?

A.   He told me over the phone that he was trying to get ahold of me that week.

[DEFENSE COUNSEL]:  Objection, nonresponsive.

THE COURT:  Overruled.

Q.  (BY [THE PROSECUTOR]) You can answer.

A.   He had told me over the phone[,] and he had texted me trying to get ahold of me.  And I woke up to a Facebook page being created because he had sent me a friend request.

[THE PROSECUTOR]:  Permission to approach?

THE COURT:  Yes, ma'am.

Q.   (BY [THE PROSECUTOR]) I am showing you what's been previously marked as State's Exhibit Number 40.  Do you recognize this document?

A.  Yes, I do.

Q.  Okay.  How do you recognize that document?

A.  It's my photo, and that was the screenshot that I took of the account that he had made of me.

. . . .

Q.  (BY [THE PROSECUTOR]) Is this a fair and accurate depiction of the Facebook account that [Appellant had] communicated to you about in July of 2023?

A.  Yes.

[THE PROSECUTOR]:  At this time the State would offer -- admit State's 40 for all purposes.  Tendering to Defense.

[DEFENSE COUNSEL]:  Judge, we would renew our 403 objections and our extraneous objections.

THE COURT:  All right.  Those objections are overruled, and State's Exhibit 40 is admitted.

[THE PROSECUTOR]:  Permission to publish by passing it?

THE COURT:  Yes, ma'am, please.

Q.  (BY [THE PROSECUTOR]) . . . [A]t the time that this Facebook account was created, had y'all had multiple conversations about hi[s] deleting any intimate photos or videos he had of you?

A.  Yes.

. . . .

Q.  (BY [THE PROSECUTOR]) So he was making good on those threats to publish things?

A.  Correct.

8

Although it is not spelled out in this portion of the record, when the State took the complainant on voir dire outside the jury's presence to ask her about the Facebook page, she said that she had recognized the photo in the profile as a picture of her wearing lingerie. During the defense's voir dire of the complainant regarding this exhibit, the following provided some clarity about the photo:

> Q. Okay. And there's nothing revealing in this photo, is it?
>
> A. The whole photo, when you clicked on the profile picture, you could see the entire picture, not just that circle that shows when you look at a profile.
>
> Q. I mean, is this basically a selfie?
>
> A. Yes.

We have reviewed the thumbnail photo and describe it as follows: The right side of the photo shows half of the complainant's face, the middle of the photo shows a thin black strap on her shoulder, and the right part of the photo shows a black bump—presumably the lingerie covering her rear; the thumbnail photo does not show her front torso, legs, or arms.

## C. Rule 403 Balancing Test

As to the first *Gigliobianco* factor—the inherent probative force of the proffered item of evidence—we conclude that the screenshot of the Facebook profile page with the "semi-nude" photograph of the complainant was highly probative to show why she continued to have contact with Appellant after she had ended their dating relationship. The complainant testified that after she had ended the relationship,

9

Appellant repeatedly threatened to expose intimate videos unless she obeyed his commands to have sex, to do his laundry, or to give him money. The complained-of evidence demonstrated that Appellant's threats were not empty ones, that he had followed through on them when she was away with her friend and not available to do his bidding, and that the complainant was justified in taking Appellant at his word. *Cf. Pyle v. State*, No. 02-24-00155-CR, 2025 WL 728111, at *5 (Tex. App.—Fort Worth Mar. 6, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that evidence reflecting past instances of domestic violence between appellant and the complainant, their volatile on-again–off-again relationship, and the complainant's reluctance to press charges against appellant was highly probative); *James*, 623 S.W.3d at 548 (holding that "the probative value of the extraneous-offense evidence was strong" when it "was probative of the nature of [appellant's] abusive relationship with [the victim]" and it "rebut[ted] the defensive theory of fabrication").

Appellant argues that the complained-of evidence is "both remote from and dissimilar from the charged offense[s]." Appellant's remoteness argument lacks sway as the evidence shows that Appellant created the fake Facebook profile for the complainant in July 2023[5] and that she made her police report in December 2023—only five months later. *See Parlin v. State*, 591 S.W.3d 214, 224 (Tex. App.—Houston

[5]Appellant argues that "[t]he record here is utterly unclear as to who created the purportedly fraudulent Facebook profile[] or who posted the semi-nude picture of [the complainant] online." We disagree. The jury had before it the complainant's uncontradicted testimony that Appellant had told her that he had made the Facebook profile.

10

[1st Dist.] 2019, no pet.) (noting that "courts have found that even long lapses in time do not deplete the probative value of the evidence" and collecting cases allowing evidence of extraneous offenses from thirteen years, four to seven years, and twenty-six months before the charged offense). Moreover, although the Facebook profile did not depict the assaultive incidents for which Appellant was on trial, it was connected to them, showing why the complainant had maintained contact with Appellant.

As to the second *Gigliobianco* factor—the proponent's need for the evidence—the State had a strong need for the evidence because Appellant's defensive theories were (1) that the complainant had framed him by making secret recordings of their phone calls and (2) that she was complicit in the abuse because she continued to see him after breaking up with him in March 2023 and did not make a police report until December 2023. *See Miranda v. State*, No. 02-23-00324-CR, 2025 WL 1782540, at *6 (Tex. App.—Fort Worth June 26, 2025, no pet.) (mem. op., not designated for publication) (concluding that the State had a strong need for the extraneous-offense evidence to bolster the complainant's credibility and to rebut the defense's theory that her story was fabricated); *cf. Gaulding v. State*, No. 02-21-00096-CR, 2022 WL 17986026, at *5 (Tex. App.—Fort Worth Dec. 29, 2022, pet. ref'd) (mem. op., not designated for publication) (holding that the State had a "strong need" for extraneous-offense evidence in domestic-assault case because it rebutted the defense's theory "that the abuse was mutual and just part of the couple's sexual foreplay or their usual,

11

'toxic' dynamic"). Considering the first two *Gigliobianco* factors, we conclude that the complained-of evidence's probative value was very high.

As to the third through fifth *Gigliobianco* factors—any tendency of the evidence to suggest a decision on an improper basis, any tendency of the evidence to confuse or distract the jury from the main issues, and any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight—we note that the trial court gave the jury the following limiting instruction:

> You are instructed that if there is any testimony before you in this case regarding [Appellant's] having committed bad acts other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that [Appellant] committed such other bad acts, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident or the nature of the relationship, if any, existing between the person and [Appellant] if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

We are to presume that the jury followed the trial court's instruction. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). Although this presumption is rebuttable, an appellant has the burden to refute it by pointing to evidence that the jury failed to follow the trial court's instructions. *Id.* Here, Appellant has not pointed to any evidence that demonstrates that the jury failed to follow the trial court's limiting instruction. *See Baxter v. State*, No. 02-22-00258-CR, 2023 WL 8268292, at *11 (Tex. App.—Fort Worth Nov. 30, 2023, pet. ref'd) (mem. op., not designated for publication) (rejecting argument that the jury would be confused by evidence or would use it for an

12

improper purpose when the trial court gave a limiting instruction and when appellant did not suggest that the jury had failed to follow instruction); *Gaulding*, 2022 WL 17986026, at *6 ("These instructions—which we presume the jury followed—equipped the jury to weigh the extraneous[-]offense evidence properly and minimized the risk of the jury's improperly relying on such evidence in reaching its verdict." (citation omitted)).

Additionally, we note that the Facebook profile was not more heinous or gruesome than the complainant's injury photographs that were admitted to prove up the charged assaultive incidents. Regarding the "semi-nude" nature of the photograph,

> Whether the body is clothed is only one consideration when determining whether unfair prejudice substantially outweighs the probative value of evidence. *See Shuffield*[ *v. State*], 189 S.W.3d [782,] 787[ (Tex. Crim. App. 2006)]. Indeed, the Court of Criminal Appeals has many times decided that photos of naked bodies were admissible and that their probative value was not substantially outweighed by their prejudicial effect. *See, e.g., Gallo v. State*, 239 S.W.3d 757, 762–64 (Tex. Crim. App. 2007) (autopsy photographs of an unclothed three-year-old child); *Casey*[ *v. State*], 215 S.W.3d [870,] 882–84 [(Tex. Crim. App. 2007)] (nude, sexually explicit photos of multiple women); *Wyatt v. State*, 23 S.W.3d 18, 29–30 (Tex. Crim. App. 2000) (photos of a child's anus); *Santellan*[ *v. State*], 939 S.W.2d 155, 172–73 (Tex. Crim. App. 1997) (autopsy photos of a naked victim's body). In the context of nudity, the photos in this case are far less prejudicial than those in the cases cited. Because the photos did not show [the victim's] sexual organs and only showed his abdomen to the extent necessary to view the gunshot wound, their prejudicial effect, if any, did not substantially outweigh their probative value.
>
> . . . A trial court does not abuse its discretion simply because it admits gruesome photos.

*Gabriel v. State*, No. 04-11-00548-CR, 2012 WL 6743557, at *12 (Tex. App.—San Antonio Dec. 31, 2012, pet. ref'd) (mem. op., not designated for publication) (holding

13

that the fact that the victim's pubic hair could be seen in two photos of the gunshot wound to the abdomen did not tip the scale in favor of exclusion). Thus, the risk of unfair prejudice was relatively low. *See Pyle*, 2025 WL 728111, at *6 (first citing *Gaulding*, 2022 WL 17986026, at *7 ("[B]ecause the extraneous offenses were no more heinous than the charged offenses, the risk of unfair prejudice was relatively low."); and then citing *Norwood v. State*, No. 03-13-00230-CR, 2014 WL 4058820, at *5 (Tex. App.—Austin Aug. 15, 2014, pet. ref'd) (mem. op., not designated for publication) ("When the extraneous offense is no more heinous than the charged offense, evidence concerning the extraneous offense is unlikely to cause unfair prejudice.")).

Moreover, we note that the complained-of evidence was not scientific in nature, nor was it overly complex; thus, there was little risk of confusion. *See id.* at *7; *see also Gigliobianco*, 210 S.W.3d at 641 (listing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force").

As to the sixth *Gigliobianco* factor—the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted—the testimony regarding the complained-of evidence consumed approximately thirteen pages[6] of the over-450 pages of the reporter's record

---

[6]This total represents nine pages of testimony that were given outside the jury's presence when the complainant was taken on voir dire, plus four pages of testimony during the trial. Additionally, the State made a short, one-paragraph argument during rebuttal referencing the Facebook profile: "He was coercing her. He was demanding

14

comprising the three-day guilt–innocence phase of Appellant's trial. In light of this record, we hold that the presentation of the complained-of extraneous-offense evidence did not consume an inordinate amount of time during Appellant's trial. *See Pyle*, 2025 WL 728111, at *7 (holding that extraneous-offense evidence that consumed approximately twelve pages of the over-350 pages of the reporter's record did not consume an inordinate amount of time at trial).

Balancing all six of the *Gigliobianco* factors, we hold that the trial court did not abuse its discretion by determining that the probative value of the complained-of evidence was not substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Accordingly, we overrule Appellant's sole point.

## IV. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgments.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 11, 2025

---

sex of her. He did follow through with his threats. He made a Facebook account with her nudes on it. And that's in evidence."